IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CHARLES J. MCGILLEY,

    Plaintiff,

    v.

STERLING JEWELERS, INC., et al

    Defendants.

Civil Action
No. 12-5217 (JBS-KMW)

**OPINION**

APPEARANCES:

David R. Castellani, Esq.
Castellani Law Firm, LLC
450 Tilton Road
Suite 245
Northfield, NJ 08225
    Attorney for Plaintiff Charles J. McGilley

Thomas A. Cuniff, Esq.
Fox Rothschild LLP
Princeton Pike Corporate Center
997 Lenox Drive
Building 3
Lawrenceville, NJ 08648-2311
    Attorney for Defendants Sterling Jewelers, Inc., Jeffrey
    Yoder, and Ann Marie Patton

**SIMANDLE,** Chief Judge:

## I.    INTRODUCTION

    Plaintiff Charles J. McGilley brings this action against

Defendants Sterling Jewelry Inc. t/a Jared The Galleria of

Jewelry ("Sterling"), Sterling's District Manager Jeffrey Yoder,

Sterling's Regional Vice President Ann Marie Patton, and John

Doe Sterling Jewelry, Inc. alleging violations of the New Jersey

Conscientious Employment Protection Act ("CEPA"), New Jersey

public policy, the New Jersey Law Against Discrimination ("NJLAD"), and breach of contract. This action comes before the Court on the Motion of Defendants Sterling, Yoder, and Patton to Stay Pending Arbitration [Docket Item 4] and Plaintiff's Cross-Motion for Legal Determination [Docket Item 10].

The principal issue is whether Plaintiff is contractually bound to participate in arbitration. The Court finds that he is bound because, when he commenced employment at Sterling, he signed an Arbitration Agreement ("Agreement") that is valid and enforceable. Defendants' motion to stay this case pending arbitration [Docket Item 4] will be granted. Plaintiff's Cross Motion for Legal Determination [Docket Item 10] asks the Court to make a legal determination regarding whether the one-year statute of limitations in the Arbitration Agreement was satisfied or, in the alternative, may be equitably tolled. The Court will deny Plaintiff's cross motion because a determination regarding time limitations is an issue properly before the arbitrator.

## II.  BACKGROUND

Defendant Sterling employed Plaintiff McGilley as a general manager of its Deptford, New Jersey Store. (Docket Item 1-2, Am. Compl. ¶ 1.) Plaintiff was hired on June 20, 2007 and terminated on July 12, 2011. (Am. Compl. ¶¶ 1, 10.)

Plaintiff claims that, while he was employed at Sterling, he became aware of Sterling's policy and practice of funneling customers from the Deptford, New Jersey store to the Sterling store in Delaware to avoid New Jersey sales tax. (Am. Compl. ¶ 2.)  Plaintiff alleges that, when a sale originated in New Jersey and was completed in Delaware, the two stores would split the commission. (Am. Compl. ¶ 8.) Plaintiff believed that this practice was illegal, and he complained about it for three years to his supervisors, including Defendant Jeffrey Yoder, the Sterling District Manager. (Am. Compl. ¶¶ 3-4.) In February or March of 2011, Plaintiff allegedly told Yoder that, if the sales tax evasion practice did not cease, then Plaintiff would complain to the Internal Revenue Service. (Am. Compl. ¶ 5.) Yoder allegedly responded, "I am fucking sick and tired of hearing about Wilmington, I don't want to hear about it again, or I will put a new manager in." (Am. Compl. ¶ 9.)

On July 12, 2011, Plaintiff was terminated from his General Manager position because he allegedly accepted gifts from customers, allowed alcohol on the property, and conducted poor audits. (Am. Compl. ¶ 10.)

Plaintiff alleges that his termination constituted a violation of the New Jersey Conscientious Employment Protection Act ("CEPA"), Count I, and a wrongful termination in violation of public policy, Count II.

3

In Count III, Plaintiff alleges that Sterling breached its express and/or implied contract of employment because Plaintiff was not compensated for a vacation that he had earned after exceeding his 2011 sales quota. In Count IV, Plaintiff alleges that Defendant Yoder and Defendant Ann Marie Patton, Sterling's Regional Vice President, terminated Plaintiff and other male managers, replaced them with younger, female employees, and, thus, violated New Jersey's Law Against Discrimination. As a result of his wrongful termination, Plaintiff lost past and future wages and suffered emotional distress. (Am. Compl. ¶ 13.)

Plaintiff filed this action in New Jersey Superior Court in Atlantic County. Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b) because there is complete diversity between the Plaintiff and the Defendants and the amount in controversy exceeds $75,000, so this matter lies within this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).

Defendants Sterling, Yoder, and Patton filed a motion to stay proceedings pending submission to a mandatory alternative dispute resolution program. [Docket Item 4.] Defendants argued that, when Plaintiff commenced his employment, he signed an Arbitration Agreement ("Agreement") [Docket Item 4-3] in which he agreed to use Sterling's binding and mandatory alternative dispute resolution program, called RESOLVE, to settle workplace

disputes.[1] In addition, Plaintiff also agreed to use RESOLVE in exchange for Sterling's review of his employment application.[2]

Plaintiff opposed Defendant's motion [Docket Item 9], arguing that the Arbitration Agreement should be held unenforceable because it is a contract of adhesion and is both procedurally and substantively unconscionable. In the event that the Court finds arbitration is mandatory, Plaintiff asks the Court to make a legal determination either that Plaintiff substantially complied with the statute of limitations contained in the Arbitration Agreement or that the statute of limitations should be equitably tolled.[3]

---

[1] The agreement is titled, "RESOLVE PROGRAM Alternative Dispute Resolution Arbitration Agreement." [Docket Item 4-3 at 4.] The first sentence reads, "I . . . hereby agree to utilize the Sterling RESOLVE Program to pursue any pre-employment, employment, or post-employment dispute, claim, or controversy . . . against Sterling Jewelers Inc., its . . . employees, . . . regarding any alleged unlawful act regarding my application for employment, employment or the termination of my employment which could have otherwise been brought before an appropriate court including, but not limited to, . . . any state anti-discrimination statutes . . . or any local, state, or federal law, regulation or ordinance; or any public policy, contract, tort or common law." [Docket Item 4-3 at 4.]

[2] Plaintiff submitted an employment application to Sterling on May 15, 2007, in which he signed beneath a text block that read, "IN CONSIDERATION OF THE COMPANY'S REVIEW OF YOUR EMPLOYMENT APPLICATION AND THE COMPANY'S AGREEMENT TO USE THE COMPANY'S BINDING AND MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROGRAM ("RESOLVE") TO RESOLVE COVERED DISPUTES, YOU AGREE TO USE RESOLVE TO RESOLVE COVERED DISPUTES THAT YOU MAY HAVE AGAINST THE COMPANY. . . ." [Docket Item 4-3 at 8.]

[3] Plaintiff initially filed the cross-motion for legal determination regarding the statute of limitations as part of its response [Docket Item 9] to Defendants' motion to stay. In

### III. STANDARD OF REVIEW

The Third Circuit has "repeatedly recognized that the Federal Arbitration Act ("FAA") establishes a "strong federal policy in favor of the resolution of disputes through arbitration." Nino v. Jewelry Exch., Inc., 609 F.3d 191, 200 (3d Cir. 2010). Under the FAA, arbitration agreements "are enforceable to the same extent as other contracts." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003) (internal quotations and citations omitted). "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Id. (citing, inter alia, 9 U.S.C. §§ 3-4). The preceding qualification that an arbitration agreement be "valid and enforceable" before arbitration can be compelled "makes clear that when a party to an arbitration agreement challenges the validity of the agreement, a threshold question of arbitrability is presented for the court to decide." Nino at 200.

Plaintiff contends that the Arbitration Agreement should be held unenforceable because it is a contract of adhesion and is

---

response to a quality control message from the Clerk's office, Plaintiff separately filed a Cross Motion for Legal Determination [Docket Item 10] that relied on the brief he previously submitted [Docket Item 9].

both procedurally and substantively unconscionable; these contentions raise threshold issues of arbitrability that the Court must decide. See Nino at 200 ("Nino's contention that the arbitration agreement at issue in this case is unconscionable presents such a question of arbitrability.")

The first question before the Court is which law governs.[4] "The cardinal principle of the law of arbitration is that under the FAA, arbitration is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. . . . That freedom extends to choice-of-law provisions governing agreements, including agreements to arbitrate." Gay v. CreditInform, 511 F.3d 369, 388-389 (3d Cir. 2007). In other words, federal jurisprudence honors contractual choice-of-law provisions, including choice-of-law provisions in arbitration agreements.

The RESOLVE Arbitration Agreement that Plaintiff signed states, "This agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Ohio." [Docket Item 4-3 at 5.] The Court will therefore apply Ohio law.

## IV.  PLAINTIFF IS BOUND TO PARTICIPATE IN ARBITRATION

---

[4] Plaintiff argues that "[i]n addressing a claim that an Arbitration clause is unconscionable, the Courts apply princip[les] of the involved state or territory" and then discusses New Jersey law regarding unconscionability. (Pl. Opp'n at 10.)

The Court will grant Defendants' motion to stay pending arbitration because Ohio law favors arbitration, the Agreement is neither procedurally nor substantively unconscionable, and Defendant Sterling did not repudiate the Agreement.

## A. Ohio Law Favors Arbitration

Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration. R.C. Chapter 2711; Taylor Bldg. Corp. of Am. v. Benfield (2008), 117 Ohio St.3d 352, ¶ 27. As the Ohio Supreme Court has stated, "Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute." Schaefer v. Allstate Ins. Co. (1992), 63 Ohio St.3d 708, 712. Arbitration also "has the additional advantage of unburdening crowded court dockets." Mahoning Cty. Bd. of Mental Retardation (1986), 22 Ohio St.3d 80, 83. Under Ohio law, in light of the strong presumption favoring arbitration, all doubts should be resolved in its favor. Ignazio v. Clear Channel Broadcasting, Inc. (2007), 113 Ohio St. 3d 276, ¶ 18.

An arbitration agreement is enforceable unless grounds exist at law or in equity for revoking the agreement. R.C. 2711.01(A). Unconscionability is one such ground for revocation of an arbitration agreement. Taylor Bldg., ¶ 33. "The party asserting unconscionability of a contract bears the burden of

8

proving that the agreement is both procedurally and substantively unconscionable." Hayes v. Oakridge Home (2009), 122 Ohio St. 3d 63, ¶ 20. Procedural unconscionability deals with those factors relating to the ultimate bargaining positions of the contracting parties, i.e., age, education, intelligence, business acumen, and experience. Lynn v. McKinley Ground Transp., L.L.C. (2009), 185 Ohio App. 3d 146, 149. Substantive unconscionability relates to the contract terms themselves and whether they are commercially reasonable. Id. The determination of whether a contractual provision is unconscionable is fact-dependant and requires an analysis of the circumstances of the particular case before the court. Wascovich v. Personacare of Ohio (2010), 190 Ohio App. 3d 619, 625.

For the reasons now discussed, Plaintiff has shown neither procedural nor substantive unconscionability and, because Ohio law requires him to show both elements, the Court will enforce the Arbitration Agreement. Defendants' motion for stay pending arbitration will be granted.

### B. Procedural Unconscionability

In determining procedural unconscionability, a court considers "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative

9

bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." <u>Cross v. Carnes</u> (1998), 132 Ohio App.3d 157, 170. But "inequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract." <u>Taylor Bldg</u>., ¶ 45. "The crucial question is whether each party to the contract, considering his or her obvious education or lack of it, had a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print?" <u>Ohio Univ. Bd. of Trustees v. Smith</u> (1999), 132 Ohio App.3d 211, 220.

Plaintiff generally asserts that the Arbitration Agreement is invalid because he did not receive copies of either the Arbitration Agreement or the underlying arbitration rules. (Pl. Opp'n at ¶¶ 6, 15.) Plaintiff has cited no case law for the proposition that an arbitration agreement is only valid when the signatory is provided with a copy of the agreement and the arbitration program rules. Nor has Plaintiff asserted that he requested a copy of the Agreement or the rules and that Sterling denied his request. This argument lacks merit. <u>See</u> <u>Tarulli v. Circuit City Stores, Inc.</u>, 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) ("Despite the fact that the Plaintiff claims to have signed the Agreement without reading the Rules and never requested a copy during her six years of employment, she now

10

seeks to benefit by her own inaction. This argument by the Plaintiff also holds no weight and is rejected by this Court.")

Plaintiff also argues that he did not "recall" signing the Arbitration Agreement. (Pl. Opp'n at 4 ¶ 6.) Plaintiff has not asserted that he was unable to read to read the document or incapable of comprehending his actions when he signed the Agreement. The Ohio Appeals Court has held, "Failure to review an agreement is not an excuse." Lynn v. McKinley Ground Transp., L.L.C. (2009), 185 Ohio App. 3d 146, ¶ 26.

Moreover, Defendants note that one of Plaintiff's duties as store manager was to provide and explain Sterling's new hire packet, which includes the Arbitration Agreement, to newly hired employees. (Def. Reply at 5.) Defendants attached seven arbitration agreements that Plaintiff signed as the Sterling representative when other employees were signing the agreement. [Docket Item 18-1, Ex. B-H.] The arbitration agreements with Plaintiff's signature as witness appear identical to the Agreement that he signed when he commenced employment, i.e., the document that is the operative basis of the motion presently before the Court. It seems particularly implausible for Plaintiff to argue that he does not recall signing the Agreement and was unaware of its contents when he signed as a witness, in his capacity as general manager, for seven other employees.

11

Plaintiff also claims that "he was never informed of a right to consult an attorney to have this agreement reviewed at the time he signed the same, nor was he given that opportunity by the defendants, or information of the same." (Pl. Opp'n at 6 ¶ 17.) The Arbitration Agreement specifically states, "Employee has been advised of his/her right to consult with an attorney of his/her choice regarding this Agreement." [Docket Item 4-3 at 5.] Ohio Courts have held that a signature constitutes adoption and ratification of the statements contained in a document. <u>See</u> <u>Buemi v. Mut. of Omaha Ins. Co.</u> (1987), 37 Ohio App. 3d 113, 119 ("Buemi's signature and assent to the statement that the answers contained in the application were correct and complete serve, as a matter of law, as his adoption and ratification of the statements contained therein notwithstanding his claimed failure to review the application.")

While <u>Buemi</u> involved an insurance application, the Ohio Court of Appeals considered a plaintiff's challenge to an arbitration agreement that she signed as an employee in <u>Vanyo v.</u> <u>Clear Channel Worldwide</u> (2004), 156 Ohio App. 3d 706. The appeals court upheld the agreement and mandated arbitration because

> nothing in the record before us allows us to conclude
> that Vanyo was unaware of the impact of the agreement
> or that she was otherwise limited in understanding its
> impact. Indeed, the agreement itself contains an
> acknowledgment that Vanyo had "been given the

> opportunity to discuss this agreement with [her]
> private attorney." Accordingly, on these facts, we
> find that there was no procedural unconscionability.

Id. at 712. In this case, as with Vanyo, the Agreement at issue

specifies that the signatory has been advised of his ability to

consult with an attorney. Plaintiff's argument is insufficient

for a finding of procedural unconscionability.

    Plaintiff also argues that the Arbitration Agreement was

"by no means a simplistic document . . . [and] contains a

complex appeal scheme with differing time limitations. . . ."

(Pl. Opp'n at 11.) He notes that the Arbitration Agreement has

"at least two pages . . ., 14 paragraphs on a back and front

piece of paper all in single spaced type." (Pl. Opp'n at 11.)

Plaintiff has cited no case law to support his assertion that a

two-page document with single-spaced type is unconscionable. The

type is readable and a two-page document is not unreasonably,

much less unconscionably, long. The Ohio Supreme Court has held

that an arbitration clause that "appeared in standard, rather

than fine, print and was not hidden" was not unconscionable.

Taylor Bldg. ¶ 45.[5] Moreover, the Resolve process timelines are

---

[5] Plaintiff also criticizes the employment contract, noting that
it "only briefly mentions the Resolve Program, commits the
employee to waive a constitutional right to a jury trial and to
bring a lawsuit against Defendant Sterling for any statutory
claims by use of hidden, fine print language just above the
signature line on a two page document." (Pl. Opp'n at 11-12.) He
emphasizes that "[t]he size of the letters forming the waiver
provisions within the employment application are barely a

clearly outlined, with deadlines for both Sterling and the
employee as a grievance proceeds through Resolve Steps 1, 2, and
3.[6]

 Plaintiff argues that the "limitation period is not set
forth in bold print, large print or in any way highlighted for
the employee." (Pl. Opp'n at 5 ¶ 12.) The Agreement clearly
states, "Unless prohibited by law, a demand to use the RESOLVE
Program must be made in writing and must be postmarked or
delivered to the RESOLVE Program Administrator no later than one
(1) year after the unlawful conduct has occurred." [Docket Item
4-3 at 4.] The Agreement further mandates: "Failure expressly to
demand use of RESOLVE, in writing, within that time limitation
shall serve as a waiver and release with respect to all such
claims." [Docket Item 4-3 at 4.] Courts have held a one-year
limitation to be reasonable. See, e.g., Morrison v. Circuit City
Stores, Inc., 317 F.3d 646, 673 (6th Cir. 2003) (assessing

---

millimeter high if that." (Pl. Opp'n at 12.) The Arbitration
Agreement alone would be sufficient to compel arbitration.
However, the text of the employment application arbitration
clause was legible and in all capital letters for emphasis. It
was not procedurally unconscionable.
[6] Sterling has 30 days from receipt of a Step 1 claim form to
send an initial claim review determination; the Employee has 30
calendar days from receipt of the Step 1 claim form
determination to send a Step 2 appeal claim form; Sterling has
45 calendar days to notify the claimant of assignment to the
Step 2 review panel or mediation; after Step 2, the Employee
then has 30 days to submit the Step 3 claims form. [Docket Item
4-3 at 5.]

arbitration agreement under Ohio law; finding that one-year

limitation was not unreasonable).

In Lynn v. McKinley Ground Transp., L.L.C. (2009), 185 Ohio

App. 3d 146, the Ohio Appeals Court examined an arbitration

agreement and held:

> the following factors support enforcing the
> arbitration agreement: the agreement was on a separate
> single sheet of paper conspicuously labeled "DISPUTE
> RESOLUTION—ARBITRATION," it specifically referred to
> an employee handbook, it labeled the arbitration as
> binding, it set forth Summit County as the appropriate
> jurisdiction, and it included a waiver to submit
> claims to a court of law and the right to a jury
> trial.

Id. at 151.

In this case, the Agreement satisfied the Lynn factors:

conspicuous label, clear waiver, specificity about the

applicable legal regime (even though the Sterling Agreement did

not specify the arbitration jurisdiction), label defining the

arbitration as binding, and a waiver to submit claims to a court

of law. The Sterling Agreement was conspicuously labeled as the

"RESOLVE PROGRAM Alternative Dispute Resolution Arbitration

Agreement." It included a clear waiver, stating "This Agreement

waives the parties rights to obtain any legal or equitable

relief . . . through any court. . . ." [Docket Item 4-3 at 4.]

It specified that "the arbitrator's decision shall be final and

binding." [Docket Item 4-3 at 4.] Essentially, the Sterling

Agreement satisfied the standards promulgated by Ohio courts for valid and enforceable arbitration contracts.

Plaintiff also emphasizes his "complete lack of ability to negotiate any of the terms of this agreement." (Pl. Opp'n at 12.) Plaintiff claims that the Arbitration Agreement is a contract of adhesion because it contains language that the "employee understands that he/she would not be or remain employed by Sterling absent signing this agreement." [Docket Item 4-3 at 5.]

A contract of adhesion as a "standardized contract form offered on essentially a 'take it or leave it' basis." Morrison v. Circuit City Stores, Inc., 70 F. Supp. 2d 815, 821 (S.D. Ohio 1999), aff'd on other grounds, 317 F.3d 646 (6th Cir. 2003). In Morrison, the plaintiff argued that the arbitration agreement was a contract of adhesion and alleged that she was "forced" to sign the Agreement as part of her employment application in order to be considered for employment by the defendant. Id. at 821. The Morrison court disagreed and found that adhesion contracts do not exist where applicants have a choice of where to apply for a job. Id. at 822. Moreover, even if, arguendo, the Agreement were a contract of adhesion, the Ohio Supreme Court has held that "even a contract of adhesion is not in all instances unconscionable per se" and "few consumer contracts are negotiated one clause at a time." Taylor Bldg. ¶ 50.

16

Plaintiff has provided no factual or legal basis to find the Agreement procedurally unconscionable.

### C. Substantive Unconscionability

Under Ohio law, a finding of unconscionability requires a plaintiff to show both procedural and substantive unconscionability. As explained above, Plaintiff has not shown procedural unconscionability. He also has not shown substantive unconscionability, which involves the specific terms of the contract. "When considering substantive unconscionability, the court should observe whether the terms of the contract are commercially reasonable." Wascovich v. Personacare of Ohio, supra, (2010), 190 Ohio App. 3d at 626.

Plaintiff argues that Resolve Agreement's language was "too ambiguous to establish that the plaintiff clearly and unmistakably waived his right to bring" claims under the New Jersey Law Against Discrimination ("NJLAD") and the Conscientious Employee Protection Act ("CEPA"). (Pl. Opp'n at 14-15.) Plaintiff cites Smith v. TA Operating LLC, Civil No. 10-2563 (FLW), 2011 WL 3667507 (D.N.J. Aug. 19, 2011), in which the District of New Jersey held "the language of this clause is too ambiguous to establish that Plaintiff clearly and unmistakably waived her right to bring a CEPA claim against Defendant within one year." Id. at *7. The Smith court held:

> [T]here is no requirement that CEPA must be
> specifically mentioned in the provision in order for
> the waiver to be effective, to pass muster, however, a
> waiver-of-rights provision should at least provide
> that the employee agrees to waive statutory rights
> arising out of the employment relationship or its
> termination. It should also reflect the employee's
> general understanding of the type of claims included
> in the waiver, e.g., workplace discrimination claims.

Smith v. TA Operating LLC, Civil No. 10-2563 (FLW), 2011 WL

3667507, *7 (D.N.J. Aug. 19, 2011). This case is not binding

authority because Ohio law governs, but Smith actually supports

Defendants' argument that the Resolve Agreement is valid and

enforceable. The first sentence of the Resolve Agreement states

that the employee agrees to use Resolve to pursue any claim

regarding

> any alleged unlawful act regarding my application for
> employment, employment or the termination of my
> employment which could have otherwise been brought
> before an appropriate court including, but not limited
> to, . . . any state anti-discrimination statutes . . .
> or any local, state, or federal law, regulation or
> ordinance; or any public policy, contract, tort or
> common law.

[Docket Item 4-3 at 4.] The Agreement also specifies that

"[t]his Agreement waives the parties rights to obtain any legal

or equitable relief . . . through any court. . . ." [Id.] This

language satisfies the Smith requirements: there is a reference

to claims "arising out of the employment relationship or its

termination" and the Agreement specifically identifies "discrimination claims." See Smith at *7.

Plaintiff also argues that the Resolve program rules are invalid because (1) they limit discovery to three depositions and 20 interrogatories and (2) the second step of the Resolve Process involves a panel of four decision-makers chosen by Sterling. Plaintiff has cited no case law showing that these discovery restrictions are unconscionable. Moreover, according to the arbitration rules that Plaintiff attached to his briefing, any party may request additional discovery from the arbitrator.[7] [Docket Item 15-3 at 22.]

In addition, although Plaintiff has not attached the Resolve Brochure to his Opposition brief, it appears that Step 2 of the Resolve Process is not the arbitration step:

> The Step 2 appeal is resolved either by an outside mediator or by a 5-member review panel. The Step 2 decision is binding on Sterling, but not on the employee. If dissatisfied with the Step 2 appeal decision, an employee may demand binding arbitration before a jointly-selected outside arbitrator from the American Arbitration Association . . . by completing and returning a Step 3 appeal form.

Freeman v. Sterling Jewelers, Inc., CIV A 1:08CV154-SRW, 2008 WL 3890498, *1 (M.D. Ala. Aug. 18, 2008). Step 2 does not bind the Plaintiff and, therefore, there is no basis to declare substantive unconscionability.

---

[7] The rules also note that the 20-interrogatory limit permits sub-parts. [Docket Item 15-3 at 22.]

Plaintiff cites <u>Garrett v. Hooters-Toledo</u>, 295 F. Supp. 2d 774, 782 (N.D. Ohio 2003) to support his argument that Ohio courts will find an arbitration agreement unconscionable when there is a one-sided selection process for the decision-maker. In <u>Garrett</u>, mediation was a mandatory step before arbitration and the mediation had to be conducted in Jefferson County in Kentucky before mediators selected from "a list of purportedly neutral mediators provided by the company." <u>Garrett</u> at 783. Plaintiff has not asserted that there is a similarly one-sided list of arbitrators under the Sterling Resolve program; the <u>Freeman</u> court found that the Resolve program involved a jointly-selected outside arbitrator from the American Arbitration Association.

In addition, <u>Garrett</u> supports the reasonableness of the Resolve Agreement. In <u>Garrett</u>, the arbitration agreement had a ten-day statute of limitations, which the <u>Garrett</u> court held was "unreasonable and unfair." <u>Id.</u> at 782. In this case, the limitation stated in the Agreement is one-year, which is not substantively unreasonable.

### D. Repudiation

Plaintiff also argues that he repudiated the Arbitration Agreement because he rejected the Sterling General Manager Bonus Plan, which references RESOLVE. The bonus plan states:

> In consideration of the Company's General Manager's
> Bonus Plan and the Company's agreement to utilize the
> Company's binding and mandatory alternative dispute
> resolution program ("RESOLVE"), I agree to use RESOLVE
> to resolve covered disputes that I may have against
> the Company, including but not limited to disputes
> about this Bonus Plan.

[Docket Item 15-5 at 17.] Plaintiff did not sign this Bonus Plan

form, despite opportunities to do so. The first time Sterling

gave him the Bonus Plan paperwork, instead of signing the Bonus

Plan, Plaintiff wrote a note stating:

> Due to the Economic Downturn affecting Sterling, Jared
> and the Country as a whole, and in fairness to my Team
> Jared at 2475, combined with my leadership position as
> GM, I must <u>decline</u> Sterling GM Bonus Plan.
> Semper Fi<br>Charles McGilley

[Docket Item 15-5 at 17.] Plaintiff argues that, with this

statement, he "believed that he was rejected [sic] the Resolve

Program for any covered disputes." (Pl. Opp'n at 9 ¶ 30.) He

notes that, even though he did not sign the form, he received

bonuses and therefore he "submit[s] that Sterling accepted the

modified agreement and the plaintiff's rejection of the Resolve

process." (Pl. Opp'n at 14.) Plaintiff further argues that his

statements regarding the bonus plan "supersede the original

Arbitration Agreement . . . and at the very least indicate a

lack of assent or intent on the part of the plaintiff necessary

to form a binding contract." (Pl. Opp'n at 14.)

Plaintiff's arguments lack merit. First, the Arbitration Agreement stipulates, "This Agreement may not be modified unless the Agreement is altered in writing and signed by an authorized Sterling representative and Employee." [Docket Item 4-3 at 5.] Plaintiff has not produced any writing signed both parties that modifies the Arbitration Agreement. Second, even if Plaintiff could unilaterally modify the Agreement, the plain text of his message on the Bonus Plan is that he does not want to accept his bonus because of the economic downturn. He does not mention arbitration; there is no way in which his message could be construed to even comment upon, much less modify, the Arbitration Agreement.[8]

Plaintiff is bound by the Resolve Arbitration Agreement. It was neither procedurally nor substantively unconscionable, and he never repudiated it.

---

[8] Plaintiff also argues that, after his termination, he initiated a claim for unemployment benefits and, although he contested the reason for his termination, the Sterling representative at the hearing did not present any exhibits referencing the Resolve Program. (Pl. Opp'n at 7 ¶ 22.) Plaintiff has also attached correspondence with a Sterling payroll manager in which he disputed the value of a vacation trip voucher that he earned and was unable to use. Plaintiff argues that Sterling did not contact him to discuss the dispute and did not initiate the Resolve Program. Plaintiff argues that Sterling's handling of the unemployment proceedings and the vacation dispute constitutes a repudiation of the Resolve Agreement. Even assuming, arguendo, that Sterling could have invoked arbitration for either of those disagreements, its choice not to do so does not constitute repudiation of the entire Agreement.

V.   **PLAINTIFF'S CROSS-MOTION FOR LEGAL DETERMINATION IS DENIED**

If the Court finds the Arbitration Agreement enforceable, Plaintiff asks the Court to make a legal determination that Plaintiff has satisfied the one-year limitation in the Agreement. Plaintiff filed his Complaint with this Court within one year of his termination, but he did not initiate the Resolve process within one year. Plaintiff proffers myriad arguments regarding equitable tolling.

The Court declines to make this determination. The United States Supreme Court has held that "the applicability of the . . . time limit rule is a matter presumptively for the arbitrator, not for the judge." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002) (quoting commentary to Revised Uniform Arbitration Act of 2000 which stated "issues of procedural arbitrability, i.e., whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide").

Plaintiff emphasizes that the Agreement contains a clause stating, "where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g. one (1) year for filing a claim)." [Docket Item 4-3

at 5.] The operative word in that clause is "may." Pursuant to the Agreement, a court may decide procedural questions, but the Agreement does not and cannot obligate a Court to do so.

Plaintiff has not developed the current record by supplying the reason(s) why he filed this case in court rather than initiating the RESOLVE program. Plaintiff seeks the benefit of equitable tolling of the one-year contractual limitations period for mistakenly filing in the wrong forum, citing Doherty v. Teamsters Pension Trust Fund, 16 F. 3d 1386, 1393-94 (3d Cir. 1994). Under Doherty, the Third Circuit sought to apply "the broader principle that 'a person is not required to sue [or arbitrate] within the statutory period if he cannot in the circumstances reasonably be expected to do so.'" Doherty, 16 F. 3d at 1394 (citing Central States, Southeast & Southwest Areas Pension Fund v. Slotky, 956 F. 2d 1369, 1376 (7th Cir. 1992)). Plaintiff has not developed the present record as to why he filed in the wrong forum, and he should have the opportunity to do so before the arbitrator. It would be imprudent for this Court to exercise discretion to make this procedural determination upon the present incomplete record. Therefore, the Court declines to determine the limitations issues, which are preserved for the arbitration forum in the event Defendant raises a time-bar defense.

**VI.   CONCLUSION**

Plaintiff signed a valid and enforceable Agreement that binds him to arbitrate any claims arising from his employment at and termination from Defendant Sterling. The Court will grant Defendants' motion to stay this action pending arbitration. The Court will deny Plaintiff's request for a legal determination regarding whether equitable tolling applies to the statute of limitations in the Agreement. That decision is the province of the arbitrator.

**March 18, 2013**                     **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                          Chief U.S. District Judge